Noah D. Lebowitz [SBN 194982]
DUCKWORTH PETERS LEBOWITZ OLIVIER LLP
100 Bush Street, Suite 1800
San Francisco, California  94104
Telephone: (415) 433-0333
Facsimile: (415) 449-6556
E-mail:  noah@dplolaw.com

Attorneys for Plaintiff
JOHN FOUTS

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

(San Jose Division)

| | |
|---|---|
| JOHN FOUTS,<br><br>      Plaintiff,<br><br>v.<br><br>MILGARD MANUFACTURING INCORPORATED,  a Washington corporation, and DOES 1 - 25, inclusive,<br><br>      Defendants. | Case No. C 11-06269<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION**<br><br>Date:      April 10, 2012<br>Time:      10:00 a.m.<br>Crtrm:     2, Fifth Floor<br>              Hon. Howard R. Loyd |

DUCKWORTH PETERS LEBOWITZ OLIVIER  LLP
100 Bush Street, Suite 1800
San Francisco, CA  94104

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO
DEFENDANT'S MOTION TO COMPEL ARBITRATION

**TABLE OF CONTENTS**

I.    INTRODUCTION ....................................................................................................... 1

II.   BACKGROUND ......................................................................................................... 1

III.  LEGAL ARGUMENT ............................................................................................... 2

   A.   STATE AND FEDERAL POLICIES FAVOR ONLY TRULY VOLUNTARY,
        MUTUAL ARBITRATION AGREEMENTS, NOT MANDATORY ARBITRATION
        AGREEMENTS THAT DISPROPORTIONATELY BURDEN EMPLOYEES ............. 2

   B.   FOUTS DID NOT WAIVE HIS RIGHTS TO CHALLENGE THE DRP ....................... 2

   C.   THE DRP IS UNENFORCEABLE BECAUSE IT FAILS TO COMPLY WITH
        CALIFORNIA PUBLIC POLICY ................................................................................. 4

      1.   The DRP Violates Public Policy Because It Improperly Limits Discovery .................. 5

         a)   The DRP Improperly Limits The *Scope* Of Discovery ........................... 5

         b)   The DRP Improperly Limits The *Methods* Of Discovery ...................... 6

      2.   The DRP Violates Public Policy Because It Does Not Ensure Adequate Written
           Findings ........................................................................................................... 7

      3.   The DRP Violates Public Policy Because It Does Not Provide For All Types Of Relief
           That Would Be Available In Court .............................................................................. 8

   D.   THE DRP IS UNENFORCEABLE BECAUSE IT IS UNCONSCIONABLE .................. 9

      1.   The DRP Is Procedurally Unconscionable ................................................................... 9

      2.   The DRP Is Substantively Unconscionable ................................................................ 11

         a)   The DRP Is Substantively Unconscionable Because It Applies
              Only to Fouts' Claims and Not To Milgard's ...................................... 11

         b)   The DRP Is Substantively Unconscionable Because It Denies
              Fouts Due Process ......................................................................... 14

DUCKWORTH PETERS LEBOWITZ OLIVIER LLP
100 Bush Street, Suite 1800
San Francisco, CA 94104

- i -

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO
DEFENDANT'S MOTION TO COMPEL ARBITRATION

c)      The DRP Is Substantively Unconscionable Because It Radically And Unfairly Restricts Both The Scope of Relevance And The Amount Of Discovery……………………………………………………………15

d)      The DRP Is Substantively Unconscionable Because Milgard Retains The Unilateral Right to Modify Or Revoke………………………..15

3.   The Offending Terms So Permeate the Agreement, and Also Show Bad  Faith by Milgard, Thus, They Should Not Be Severed.............................................. 15

IV.      CONCLUSION.................................................................................................... 17

DUCKWORTH PETERS LEBOWITZ OLIVIER  LLP
100 Bush Street, Suite 1800
San Francisco, CA  94104

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION

# **TABLE OF AUTHORITIES**

**Cases**

*A&M Produce Co. v. FMC Corp.*, 135 Cal.App.3d 473 (1982). ..................................................... 9

*Abramson v. Juniper Networks, Inc.* 115 Cal.App.4th 638 (2004)............................... 11, 13, 16, 17

*American Software, Inc. v. Ali*, 46 Cal.App.4th 1386 (1996) ....................................................... 10

*Armendariz v. Foundation Health Psychare Svcs., Inc.*, 24 Cal.4th 83 (2000)……………….*passim*

*Cole v. Burns Intern. Security Svcs,*105 F.3d 1465 (D.C. Cir. 1997) ............................................ 4

*Cummings v. Future Nissan*, 128 Cal.App.4th 321 (2005) ............................................................. 2

*Ferguson v. Countrywide Credit Indust.*, 298 F.3d 778 (9th Cir. 2002) ...................................... 12

*Fitz v. NCR Corp.,* 118 Cal.App.4th 702 (2004) ...................................................................... 6, 16

*Graham Oil Co. v. ARCO Products Co.*, 43 F.3d 1244 (9th Cir. 1994) ........................................ 9

*Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165 (9th Cir. 2003) ................................................ 15

*Kinney v. United Healthcare Services, Inc.*, 70 Cal. App. 4th 1322 (1999) ............................ 7, 11

*Little v. Auto Stiegler*, 29 Cal. 4th 1064 (2003) .......................................................................... 9

*Martinez v. Master Protection Corp.*, 118 Cal.App.4th 107 (2004)............................................. 6

*Mastrobuono v. Shearson Lehman*, 514 U.S. 52 (1995)................................................................ 2

*Mayhew v. Benninghoff*, 53 Cal.App.4th 1365 (1997) ............................................................... 14

*McManus v. CIBC World Markets Corp.*, 109 Cal. App. 4th 76 (2003) ...................................... 10

*Pearson Dental Supplies v. Superior Court*, 48 Cal.4th 665 (2010), ........................................... 8

*Stirlen v. Supercuts, Inc.* 51 Cal.App.4th 1519 (1997) .......................................................... 9, 12

*Woodside Homes of Calif., Inc. v. Superior Court*, 107 Cal.App.4th 723 (2003), ........................ 8

**Statutes**

Cal. Civil Code § 1670.5........................................................................................................ 9, 14

Cal. Const. Art. I, § 16 ................................................................................................................ 1

Cal. Gov. Code § 12965(b). ......................................................................................................... 8

U.S. Const. Amend. 7 .................................................................................................................. 1

DUCKWORTH PETERS LEBOWITZ OLIVIER LLP
100 Bush Street, Suite 1800
San Francisco, CA 94104

**Rules**

Cal. R. Prof. Resp. 2-100 ..................................................................................................... 6

F.R.Civ.P. 26(b)(1) ............................................................................................................. 5

DUCKWORTH PETERS LEBOWITZ OLIVIER LLP
100 Bush Street, Suite 1800
San Francisco, CA 94104

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO
DEFENDANT'S MOTION TO COMPEL ARBITRATION

## I.   INTRODUCTION

Plaintiff John Fouts ("Fouts") filed this case in civil court seeking a jury trial for the unlawful actions of his former employer, Defendant Milgard Manufacturing, Incorporated ("Milgard").  With this Motion, Milgard asks this Court to strip Fouts of his constitutional rights of access to the courts, a trial by jury, and due process by enforcing the compulsory arbitration agreement Milgard required Fouts to sign as a condition of accepting employment with the company.  The arbitration provisions, contained in the company's Dispute Resolution Policy ("DRP"), are defective and unenforceable.  Accordingly, Fouts respectfully requests that this Court deny the Motion in its entirety and permit him to preserve his constitutional rights.  U.S. Const. Amend. 7; Cal. Const. Art. I, § 16.

## II.   BACKGROUND

Fouts began working for Milgard in November 2003 as a Sales Representative based out of the company's Hollister facility.  Fouts Decl. ¶ 2.  His first days on the job were spent at a team building event in Fremont, off site from his home base.  *Id.* at ¶ 3.  The third day was back at the Hollister facility.  *Id.* It was then that he was presented with documents related to his hiring.  *Id.* Apparently within those documents was the DRP which bears his signature.  Fouts has no recollection of reading or signing the document. *Id.*  In fact, the first time he recalls seeing the document is as part of this litigation.  *Id.* at ¶ 4.  Fouts does recall that on that third day of employment (*i.e.*, November 5, 2003), he was presented with a set of documents as part of his hiring package and told to date them all November 3 (his actual first day of work). *Id.* at ¶ 3. Nobody at Milgard ever called the DRP to his attention, explained its contents or said that he should review the AAA rules for arbitration.  *Id.*  Nobody from Milgard gave Fouts any indication that he could negotiate any of the terms of the DRP.  *Id.*

DUCKWORTH PETERS LEBOWITZ OLIVIER LLP
100 Bush Street, Suite 1800
San Francisco, CA  94104

## III.   LEGAL ARGUMENT

### A.  STATE AND FEDERAL POLICIES FAVOR ONLY <u>TRULY VOLUNTARY</u>, <u>MUTUAL</u> ARBITRATION AGREEMENTS, <u>NOT</u> MANDATORY ARBITRATION AGREEMENTS THAT DISPROPORTIONATELY BURDEN EMPLOYEES

Contrary to Milgard's characterizations, the U.S. Supreme Court repeatedly has held that private, mandatory, arbitration under the Federal Arbitration Act is a matter of "'consent and not coercion.'"  *Mastrobuono v. Shearson Lehman*, 514 U.S. 52, 57 (1995) (citations omitted).  The California Supreme Court echoed that sentiment in regard to the California Arbitration Act:

> Arbitration is favored in this state as a *voluntary* means of resolving disputes, and this *voluntariness* has been its bedrock justification.

*Armendariz v. Foundation Health Psychare Svcs., Inc.*, 24 Cal.4th 83, 115 (2000) (emphasis added).  Because an agreement to arbitrate involves the waiver of *fundamental constitutional rights* of a jury trial and due process, and a waiver of the right to access to a public court, the requirement that such a decision be both knowing and voluntary is entirely consistent with the well established requirements for waiver of constitutional rights.

### B.  FOUTS DID NOT WAIVE HIS RIGHTS TO CHALLENGE THE DRP

At the outset of its Motion, Milgard argues that Fouts waived his right to challenge the DRP by invoking the DRP in the context of seeking pre-litigation mediation of the dispute.  In essence, Milgard argues that once Fouts' representative made any reference to the DRP – regardless of the context – his right to challenge the terms of the arbitration clauses vanished.  This argument amounts to nothing more than waiver of constitutional rights by "gotcha."

For its "gotcha" argument, Milgard relies on a single case:  *Cummings v. Future Nissan*, 128 Cal.App.4th 321 (2005).  The facts of *Cummings*, however, reveal a materially different situation than presented in this case.  In *Cummings*, there was no mediation agreement; there was only an arbitration agreement.  The arbitration agreement at issue contained two steps – essentially creating a bilateral right to appeal the original arbitrator's decision to a second arbitrator.  128 Cal.App.4th at 322-23.  The plaintiff in *Cummings* filed her complaint in Superior

DUCKWORTH PETERS LEBOWITZ OLIVIER LLP
100 Bush Street, Suite 1800
San Francisco, CA  94104

DUCKWORTH PETERS LEBOWITZ OLIVIER LLP
100 Bush Street, Suite 1800
San Francisco, CA 94104

1   Court and the defendant successfully moved to compel arbitration.  *Id.*  In the course of opposing

2   the motion to compel arbitration, the plaintiff failed to raise the issue of the enforceability of the

3   second level review.  *Id.*  It was based on this failure to raise an argument that led to the Court of

4   Appeal finding forfeiture of the argument.  *Id.*  ("As she was aware of these arguments at the time

5   the defendants moved to compel arbitration but failed to raise them, we hold she has forfeited

6   plenary consideration of them.")  There is nothing radical or new about this holding.  If a party

7   fails to raise an argument in a trial court proceeding, they cannot raise it for the first time on

8   appeal.

9          This argument, however, and the application of the forfeiture rule, has no place in this

10  case.  We are presently at the trial court stage where all arguments challenging the enforceability

11  of the arbitration clause *must* be raised.  Milgard argues that Fouts forfeited any right to

12  challenge the *arbitration* agreement by invoking *mediation* in pre-litigation communications.  In

13  other words, Milgard would have this court apply the forfeiture rule to pre-litigation

14  communications between the parties.  Milgard has cited no, and there is no, authority for this

15  proposition.

16         Contrary to Milgard's implication, Fouts never invoked the arbitration provisions of the

17  DRP.  Kraemer Decl. ¶ 4 & Exh. A.  Nor did Fouts ever intend to do so.  *Id.*  If that were the

18  case, he never would have filed his Complaint in Superior Court, and would have filed a claim in

19  arbitration.  *Id*

20         Finally, it is difficult to take Milgard's arguments seriously when now attempting to

21  argue the integrity of the DRP as a binding contract.  As described by Rhonda Sheldon Kraemer,

22  Esq. in her declaration, Milgard unilaterally went outside the DRP during the mediation process.

23  Kraemer Decl. ¶ 5 & Exh. B.  Nor can Milgard gain any favor by reciting that it paid the

24  mediator's fee.  It is not in any way out of the ordinary for defendants to pick up the cost of a

25  private mediator in employment cases.  *See* Kramer Decl. ¶ 6; Lebowitz Decl. ¶ 4.

26         In the end, Milgard has no authority for its true argument:  waiver of constitutional rights

27  by "gotcha."  Because there is no authority for such an argument, it should be rejected and the

28  Court should proceed to evaluate the terms of the DRP for compliance with California law.

- 3 -

DUCKWORTH PETERS LEBOWITZ OLIVIER LLP
100 Bush Street, Suite 1800
San Francisco, CA 94104

## C.  THE DRP IS UNENFORCEABLE BECAUSE IT FAILS TO COMPLY WITH CALIFORNIA PUBLIC POLICY

The DRP is unenforceable because it fails to comply with California public policy.  A truly voluntary and mutual arbitration agreement simply shifts the forum for claims from the courtroom to the arbitration room.  *Armendariz,* 24 Cal.4th at 99 (citing *Mitsubishi Motors v. Soler Chrysler-Plymouth*, 473 U.S. 614, 628 (1985)).  If it is truly voluntary, the arbitrating parties each have the same rights and remedies as if they were litigating the claims in court.  *Id.* at 99-100.  As the California Supreme Court explained,

> [P]arties agreeing to arbitrate statutory claims must be deemed to "consent to abide by the substantive and remedial provisions of the statute. [Citation.] Otherwise, a party would not be able to fully '"vindicate [his or her] statutory cause of action in the arbitral forum."'"

*Id.* at 101 (citing *Broughton v. Cigna Healthplans*, 21 Cal.4th 1066, 1087 (1999); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 27-28 (1991).  For instance, where a statutory claim would entitle a prevailing plaintiff to attorneys' fees and costs if the claim were brought in court, that same entitlement must be incorporated into the arbitral arena. *Id.*  To assist courts in evaluating the enforceability of arbitration agreements, *Armendariz* adopted the five-factor test articulated in *Cole v. Burns Intern. Security Svcs,*105 F.3d 1465, 1482. (D.C. Cir. 1997).  Under that test, an arbitration agreement is lawful only if it:

> "(1) provides for neutral arbitrators, (2) provides for more than minimal discovery, (3) requires a written award, (4) provides for all types of relief that would otherwise be available in court, and (5) does not require employees to pay either unreasonable costs or any arbitrators' fees or expenses as a condition of access to the arbitration forum."

*Armendariz*, 24 Cal.4th at 102 (quoting *Cole,* 105 F.3d at 1482).  If the agreement fails to contain assurances of all five factors, it violates public policy and is unenforceable.

DUCKWORTH PETERS LEBOWITZ OLIVIER LLP
100 Bush Street, Suite 1800
San Francisco, CA 94104

### 1.   The DRP Violates Public Policy Because It Improperly Limits Discovery

#### a)   The DRP Improperly Limits The *Scope* Of Discovery

In its Motion, Milgard mischaracterizes Fouts' objections to the discovery provisions of the DRP.  In particular, Milgard couches Fouts' objection as being directed solely at the limitation of type of discovery (*i.e.*, one deposition per side, no interrogatories).  While these provisions are objectionable (*see infra*), Milgard fails to address the even more severe problems with the discovery clause of the DRP:  the strict limitation on the *scope* of permissible inquiry.

The Federal Rules of Civil Procedure define the scope of permissible discovery in Rule 26:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. *Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.*

F.R.Civ.P. 26(b)(1) (emphasis added).  The DRP's Discovery clause is drastically and materially different from Rule 26:

> Discovery . . . shall be limited to that which is *clearly relevant* and material to the dispute and *for which the party has a substantial, demonstrable need*.

Motley Decl. Exh. A at 3 (emphasis added).  California courts have recognized that limiting discovery in employment cases is more detrimental to the plaintiff-employee than the defendant-employer.  This imbalance is created by both the fact that the plaintiff has the burden of proof as well as the fact that it is the employer which more often possesses the information required for a plaintiff to meet that burden.

> We recognize that in many employment disputes restricting a plaintiff to a single deposition and document request could place him in a serious disadvantage if testimony from numerous witnesses is necessary to prepare his case. We also are aware that same restriction could operate to the employer's advantage, because it has ready access to most of the relevant documents and many of the witnesses remain in its employ. Consequently, the employer has far less need for discovery in order to prepare for arbitration than the employee.

- 5 -

DUCKWORTH PETERS LEBOWITZ OLIVIER LLP
100 Bush Street, Suite 1800
San Francisco, CA 94104

*Martinez v. Master Protection Corp.*, 118 Cal.App.4[th] 107, 118 (2004).  Thus, by shifting the forum from District Court to arbitration, Milgard will change the rules of the playing field in a way that substantially and materially works to Fouts' detriment.

### b)  The DRP Improperly Limits The *Methods* Of Discovery

In addition to, and compounding, the limitations on the scope of discovery, the DRP also severely limits Fouts' ability to access information by placing unreasonable and unjustifiable limits on the methods of discovery.  The DRP limits Fouts to a single deposition and a single set of document requests.  Fouts is not entitled to engage in any other form of discovery.  No interrogatories.  No requests for admission.  No expert discovery.  Because Fouts bears the burden of proof and has very limited informal access to information relevant to proving his case, these limitations serve to severely and unfairly hamper his ability to prove his case.  Even in a case where the arbitration agreement permitted two depositions as well as and expert deposition, the Court of Appeal found the provision inadequate:

> The curtailment of discovery to only two depositions does not have mutual effect and does not provide [plaintiff] with sufficient discovery to vindicate her rights. . . . [¶] Given the complexity of employment disputes, the outcomes of which are often determined by the testimony of multiple percipient witnesses, as well as written information about the disputed employment practice, it will be the unusual instance where the deposition of two witnesses will be sufficient to present a case.

*Fitz v. NCR Corp.,* 118 Cal.App.4[th] 702, 716 (2004).

Litigating the typical single plaintiff employment case requires multiple depositions and multiple rounds of written discovery.  Lebowitz Decl. ¶ 3.  As a result of ethical restrictions, plaintiff's counsel is routinely forbidden from obtaining information from current employees of the defendant in any manner other than a noticed deposition.  *Id.*; *See also* Cal. R. Prof. Resp. 2-100.  The deposition of a single individual is never enough; in fact, it would likely be malpractice to attempt to try a typical employment case with taking only a single deposition and having no interrogatories or requests for admission.  Lebowitz Decl. ¶ 3.  The lack of depositions is compounded by the lack of other methods of written discovery.  Short of a deposition, the only means of having key questions answered in litigation is by written interrogatory.  The DRP

- 6 -

1  curtails the depositions to a point where interrogatories and requests for admission are crucial.

2  The DRP makes these methods unavailable.

3  In addition, the *Fitz* court found the safety valve language allowing the arbitrator to

4  authorize more discovery to be an inadequate safeguard.  That court observed that given the

5  limited discovery to which the plaintiff was initially entitled, she would be left with such "scant

6  discovery that [she is] unlikely to be able to demonstrate to the arbitrator a compelling need for

7  more discovery."  *Id.* at 717.

8  Other courts have invalidated provisions permitting even broader discovery than the

9  DRP.  In *Kinney v. United HealthCare Services, Inc.*, 70 Cal. App. 4th 1322 (1999), the

10  agreement to arbitrate provided the following restrictions on discovery:  interrogatories seeking

11  the identification of witnesses only, 25 document requests and two 8-hour depositions, excluding

12  experts.  *Id.* at 1326.  The *Kinney* court recognized the imbalanced impact of these limitations.

13  
14  
15  

> Given that [the employer] is presumably in possession of the vast majority of evidence that would be relevant to employment-related claims against it, the limitations on discovery, although equally applicable to both parties, work to curtail the employee's ability to substantiate any claim against [the employer].

16  *Id.* at 1332.

17  In the end, when taken in context of the limitation on scope of discovery, these

18  limitations on methods of discovery create a clear and tangible advantage for the employer and

19  put the employee in a near-impossible position of trying to prove his case and vindicate his

20  statutory rights.  Accordingly, the DRP violates California public policy and should not be

21  enforced.

22  

23  **2.  The DRP Violates Public Policy Because It Does Not Ensure Adequate Written Findings**

24  The DRP does not have any requirements that the arbitration issue a written, reasoned

25  opinion as to his or her findings.  In *Armendariz*, the Court recognized that even though judicial

26  scrutiny of arbitration awards was limited, it was at least "sufficient to ensure that arbitrators

27  comply with the requirements of the statute at issue."  24 Cal.4th at 106.  Thus, the Supreme

28  

DUCKWORTH PETERS LEBOWITZ OLIVIER LLP
100 Bush Street, Suite 1800
San Francisco, CA 94104

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO
DEFENDANT'S MOTION TO COMPEL ARBITRATION

Court held that a compulsory arbitration clause purporting to cover FEHA claims must provide for the arbitrator to issue a written arbitration decision that will reveal the essential findings and conclusions on which the award is based. *Id.* at 107. The Supreme Court elaborated on this holding in *Pearson Dental Supplies v. Superior Court*, 48 Cal.4[th] 665 (2010), explaining: "Obviously, we did not envision such a written award as an idle act, but rather as a precondition to adequate judicial review of the award so as to enable employees subject to mandatory arbitration agreements to vindicate their rights under the FEHA." *Id.* at 669.

In this case, the only passing reference to any writing by the arbitrator is contained in the "Record" paragraph of the DRP. In that paragraph, the DRP only requires the arbitration to issue a "written decision." This language is insufficient to meet the *Armendariz* requirements that the arbitrator issue a reasoned opinion which explains the basis of the award. Instead, the DRP's terms require the arbitrator only to issue his award in writing, without any requirement to explain that award. Thus, it violates public policy.

### 3. The DRP Violates Public Policy Because It Does Not Provide For All Types Of Relief That Would Be Available In Court

The DRP specifically provides: "The expense of [the employee's] representation shall be the sole responsibility of the employee." Motley Decl. Exh. A. at 2. In its Motion, Milgard declares this clause nothing more than a restatement of the "American Rule" of attorneys' fees. Of course, Milgard fails to address the fact that the FEHA creates an exception to this American Rule by empowering a prevailing plaintiff with the right to recover his reasonable attorneys' fees and costs, including expert costs. Cal. Gov. Code § 12965(b). Nowhere in the DRP does Milgard address this exception or provide any assurance that this essential provision to the FEHA will be followed. Nor does Milgard address this issue in its Motion. Instead, Milgard's sole cited authority, *Woodside Homes of Calif., Inc. v. Superior Court*, 107 Cal.App.4[th] 723, 732 (2003), is a case where there is no similar fee shifting provision in the applicable statute. As stated above, in *Armendariz*, a compulsory arbitration agreement must incorporate FEHA's fee shifting provisions. The Ninth Circuit is in accord in regard to fee shifting. In *Graham Oil Co. v.*

DUCKWORTH PETERS LEBOWITZ OLIVIER LLP
100 Bush Street, Suite 1800
San Francisco, CA 94104

*ARCO Products Co.*, 43 F.3d 1244, 1247 (9th Cir. 1994) which invalidated an arbitration agreement containing substantively identical language to the DRP.  The Ninth Circuit in that case ruled the arbitration agreement unenforceable because this language blocked the fee shifting provision contained within the statute underlying the lawsuit.

### D.  THE DRP IS UNENFORCEABLE BECAUSE IT IS UNCONSCIONABLE

As a separate and additional ground, the arbitration clauses at issue are unenforceable because they are unconscionable. Cal. Civil Code § 1670.5.  Courts will not compel arbitration where an arbitration agreement contains unconscionable terms.  *Armendariz*, 24 Cal.4th at 113-27.  Unconscionability has two components, procedural and substantive, both of which must be present to render a contract unenforceable.  *Armendariz*, 24 Cal.4th at 114 (citing *Stirlen v. Supercuts, Inc.*  51 Cal.App.4th 1519, 1533 (1997)).  "But they need not be present in the same degree."  *Id.*  Instead, California courts use a "sliding scale" approach.  *Id.*  "In other words, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa."  *Id.*  Importantly, the Court "must analyze the contract as of the time [it] was made."  *A&M Produce Co. v. FMC Corp.*, 135 Cal.App.3d 473, 487 (1982).

Compulsory pre-dispute arbitration agreements imposed as a condition of employment must be mutual.  *Armendariz,* 24 Cal. 4th at 114; *see also Little v. Auto Stiegler*, 29 Cal. 4th 1064 (2003).  If not mutual, then the terms are unconscionable and the contract will not be enforced.  *Armendariz,* 24 Cal.4th at 114.  "Courts are to look to the various purposes of the contract.  If the central purpose of the contract is tainted with illegality, then the contract as a whole cannot be enforced."  *Id.* at 124.

#### 1.  The DRP Is Procedurally Unconscionable

In *Armendariz*, the California Supreme Court found the arbitration agreement procedurally unconscionable because it was a contract of adhesion.  24 Cal.4th at 114-16.  "'The term [contract of adhesion] signifies a standardized contract, which, imposed and drafted by the

DUCKWORTH PETERS LEBOWITZ OLIVIER LLP
100 Bush Street, Suite 1800
San Francisco, CA  94104

party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract, or reject it.'" *Armendariz,* 24 Cal.4th at 113 (quoting *Neal v. State Farm Ins. Cos.*, 188 Cal.App.2d 690, 694 (1961)).  That Court found procedural unconscionability because the contract was made a condition of employment and there was no opportunity to negotiate over its terms.  *Id.*  The *Armendariz* Court further recognized the effect of the economic realities that lead to the unequal bargaining power of the relationship between employers and newly hired (or prospective) employees even where the new employee is an executive or highly compensated.  *Id.* at 115; *see also Stirlen,* 51 Cal.App.4th at 1533-34 (finding that even a high-level executive's arbitration agreement was procedurally unconscionable because he was given no opportunity to negotiate).

As Milgard does not dispute, the signing of the DRP was a condition of employment for Fouts.  There was also no opportunity for Fouts to negotiate any of the terms of the agreement.  Fouts Decl. ¶ 3.   These documents were presented to him on a take-it-or-leave-it basis.  *See Def's Motion* at 9:23-24 ("He had the opportunity to review the Agreement's terms and decide whether to accept employment.")  As stated by Milgard, Fouts' only option was to take it or leave employment.  Considering this document was not presented to Fouts until he had already accepted employment and began his engagement, this was even less of a choice than on its face.  Fouts Decl. ¶ 3.  Thus, the DRP is an adhesion contract and procedurally unconscionable.

Had this truly been a level playing field, Milgard would have specifically explained the terms of the arbitration clauses to Fouts.  The company would have fully explained that he was waiving constitutional rights as a condition of employment.  He then could have had the opportunity to have the DRP reviewed by an attorney and been able to engage in arms-length negotiations over the specific terms.  *See e.g., American Software, Inc. v. Ali*, 46 Cal.App.4th 1386, 1389, 1391-92 (1996) (rejecting the plaintiff's claim of unconscionability because she had an attorney review her contract and successfully negotiated more favorable terms).  Absent that opportunity, the contract is one of adhesion and procedurally unconscionable. *See, e.g.,* *McManus v. CIBC World Markets Corp.*, 109 Cal. App. 4th 76, 101 (2003) (plaintiff was required to sign the arbitration agreement as a condition of employment and the agreement was

- 10 -

DUCKWORTH PETERS LEBOWITZ OLIVIER LLP
100 Bush Street, Suite 1800
San Francisco, CA 94104

DUCKWORTH PETERS LEBOWITZ OLIVIER LLP
100 Bush Street, Suite 1800
San Francisco, CA 94104

1  therefore procedurally unconscionable in that it was adhesive); *Kinney v. United Healthcare*

2  *Services, Inc.*, 70 Cal. App. 4th 1322, 1329 (1999) (where employees were required to

3  acknowledge consent to the terms of the handbook which contained the arbitration clause, as a

4  condition of continued employment, the agreement was procedurally unconscionable); *see also*

5  *Armendariz,* 24 Cal. 4th at 115 ("[I]n the case of preemployment arbitration contracts, the

6  economic pressure exerted by the employer on all but the most sought after employees may be

7  particularly acute, for the arbitration agreement stands between the employee and necessary

8  employment, and few employees are in a position to refuse a job because of an arbitration

9  requirement.").

### 2.   The DRP Is Substantively Unconscionable

12  "In assessing substantive unconscionability, the paramount consideration is mutuality."

13  *Fitz v. NCR Corp.,* 118 Cal.App.4th 702, 723 (2004) (citing *Abramson v. Juniper Networks, Inc.*

14  115 Cal.App.4th 638, 664 (2004)).  "[A]n arbitration agreement imposed in an adhesive context

15  lacks basic fairness and mutuality if it requires one contracting party, but not the other, to

16  arbitrate all claims arising out of the same transaction or occurrence or series of transactions or

17  occurrences." *Armendariz,* 24 Cal. 4th at 120.  "Substantively unconscionable terms may take

18  various forms, but may generally be described as unfairly one-sided." *Little,* 29 Cal.4th at 1071.

19  Agreements to arbitrate must contain at least "a modicum of bilaterality" to avoid

20  unconscionability. *Armendariz,* 24 Cal.4th at 119.  When only the weaker party's claims are

21  subject to arbitration, and there is no reasonable justification for that lack of symmetry, the

22  agreement lacks the requisite degree of mutuality.  *Abramson,* 115 Cal.App.4th at 657.

### a)   The DRP Is Substantively Unconscionable Because It Applies *Only* to Fouts' Claims and *Not* To Milgard's

26  Here, the DRP suffers from a lack of mutuality because it impermissibly exempts from

27  arbitration Milgard's only potential claims against Fouts.  Specifically, the DRP, provides in

28  pertinent part as follows:

DUCKWORTH PETERS LEBOWITZ OLIVIER LLP
100 Bush Street, Suite 1800
San Francisco, CA 94104

1   |   Also exempt from this Policy are claims for injunctive or equitable relief the
Company might have against an employee to:  enforce non-competition agreements;
2   |   enforce non-solicitation agreements; protect, directly or indirectly, the Company's
trade secret(s), proprietary information and other Company property; and protect the
3   |   Company's business reputation.

4   Motley Decl. Exh. A at 2 (hereafter referred to as "Carve-Out provision").  The only party which

5   can state any sort of claim for breach of these sections is Milgard.  By inserting this Carve-Out

6   provision, Milgard takes advantage of its position as the adhering party and drafter of the

7   agreement to carve out for itself the unilateral ability to utilize the court system to obtain relief

8   for Fouts' potential misconduct.

9          Both state and federal courts in California have long held that such Carve-Out provisions

10   render an arbitration agreement unconscionably one-sided.  *See e.g., Ferguson v. Countrywide*

11   *Credit Indust.*, 298 F.3d 778, 784-85 (9th Cir. 2002).  In fact, approximately six years before

12   Milgard presented the DRP to Fouts containing the unilateral Carve-Out provision, the Court of

13   Appeal in *Stirlen v. Supercuts* made clear that such a provision was substantively

14   unconscionable.  51 Cal.App.4th at 1528.  In *Stirlen* the employer sought to enforce an arbitration

15   agreement which excluded from arbitration "[a]ny action initiated by the Company seeking

16   specific performance or other equitable relief in connection with any breach or violation [of the

17   paragraphs of the agreement pertaining to patent infringement, improper use of confidential

18   information and competition]."  The Court of Appeal held the exemption evidenced a lack of

19   mutuality in the arbitration agreement as a whole and that, in reality, only claims of the

20   employees would be arbitrated.  *Id.* at 1536-37, 1540-41. The Supreme Court of California

21   adopted the *Stirlen* court's formulation, explaining it this way:

22   |   But an arbitration agreement imposed in an adhesive context lacks basic fairness
and mutuality if it requires one contracting party, but not the other, to arbitrate all
23   |   claims arising out of the same transaction or occurrence or series of transactions
or occurrences. The arbitration agreement in this case lacks mutuality in this sense
24   |   because it requires the arbitration of employee--but not employer--claims arising
out of a wrongful termination. An employee terminated for stealing trade secrets,
25   |   for example, must arbitrate his or her wrongful termination claim under the
agreement while the employer has no corresponding obligation to arbitrate its
26   |   trade secrets claim against the employee

27

28

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO
DEFENDANT'S MOTION TO COMPEL ARBITRATION

DUCKWORTH PETERS LEBOWITZ OLIVIER LLP
100 Bush Street, Suite 1800
San Francisco, CA 94104

1   *Armendariz*, 24 Cal.4th at 120

2          Similarly, in *Mercuro v. Superior Court*, 96 Cal. App. 4th 167 (2002) – decided one year

3   before Fouts began working at Milgard and seven years before his employment with Milgard

4   ended – the court held substantively unconscionable a provision essentially identical in substance

5   to the Carve-Out provision here, exempting from arbitration "'claims for injunctive and/or other

6   equitable relief for intellectual property violations, unfair competition and/or the use and/or

7   unauthorized disclosure of trade secrets or confidential information.'" *Id.* at 176.  That court

8   found the agreement lacked mutuality because it "compel[led] arbitration of the claims

9   employees are most likely to bring against Countrywide . . . [but]. . . exempts from arbitration

10  the claims [the employer] is most likely to bring against its employees." *Id.*; *see also Abramson*,

11  115 Cal. App. 4th at 665 (holding a similar carve-out "explicitly unilateral," because like here,

12  "[i]t grant[ed] only 'the Company' the right to seek injunctive relief in court for 'misuse or

13  appropriation of the Company's trade secrets or confidential and proprietary information.'").

14          These cases establish that the Carve-Out provision Milgard inserted for itself is

15  unlawfully one sided and substantively unconscionable.  As the court concluded in *Stirlen*: "The

16  mandatory arbitration requirement can only realistically be seen as applying primarily if not

17  exclusively to claims arising out of the termination of employment, which are virtually certain to

18  be filed against, not by [the employer]."  51 Cal.App.4th at 1540-41.  The over zealousness of

19  Milgard's Carve-Out provision makes it unconscionable and demonstrates that the DRP lacks in

20  mutuality.  This alone – combined with the procedural unconscionability of the agreement – is

21  sufficient evidence of substantive unconscionability to make the arbitration clauses completely

22  unenforceable and the court need go no further.  *O'Hare v. Municipal Resource Consultants*, 107

23  Cal. App. 4th 267, 279 (2003) (agreement was permeated with unconscionability by a single

24  factor, lack of mutuality, and was therefore completely unenforceable.).

25          Finally, Milgard's argument that this Court may ignore the Carve-Out provision because

26  it is not at issue in the case must be disregarded.  The unconscionability inquiry analyzes the

27  terms of the contract at the time the contract is formed, *i.e.*, November 5, 2003, not at the time

28  the dispute ripens or lawsuit is filed.  Cal. Civil Code § 1670.5(a).

- 13 -

b) **The DRP Is Substantively Unconscionable Because It Denies Fouts Due Process**

The paragraph entitled "Administrative Conference" in the DRP is substantively unconscionable because it denies Fouts due process. In particular, it states: "Unless agreed to in writing by the parties, *all outstanding disputes* that either the Company or the employee might have against the other will be decided by the Arbitrator in the same proceeding." Motley Decl. Exh. A, at 3 (emphasis added). By this language, the DRP gives the arbitrator the ability and power to rule on all outstanding disputes between the parties in the framework of an administrative conference. The function of this clause is to deny Fouts an arbitration hearing, thereby denying him due process and the fundamental access to a fair forum.

In its Motion, Milgard argues that this language should be read as stating that all substantive disputes between the parties shall be decided in the same overall arbitration proceeding as opposed to the administrative conference. That is not, however, what the clause says. First, the clause is inserted by Milgard under the "Administrative Conference" heading, not the "Claims Covered by this Policy" or "Claims Not Covered by this Policy" sections. Secondly, Milgard's interpretation of the clause conflicts with the terms of the Carve-Out provision. Thirdly, as this is a contract of adhesion, the contract interpretation doctrine of *contra proferentem* applies. By that standard rule of contract interpretation, all ambiguities are to be drawn against the drafter of the contract. *See e.g., Mayhew v. Benninghoff*, 53 Cal.App.4th 1365, 1370 (1997). Accordingly, if there is any ambiguity here it is to be drawn against the drafter, *i.e.*, Milgard. Interpreting the contract in this vein renders the provision substantively unconscionable.

DUCKWORTH PETERS LEBOWITZ OLIVIER LLP
100 Bush Street, Suite 1800
San Francisco, CA 94104

- 14 -

DUCKWORTH PETERS LEBOWITZ OLIVIER LLP
100 Bush Street, Suite 1800
San Francisco, CA 94104

### c) The DRP Is Substantively Unconscionable Because It Radically And Unfairly Restricts Both The Scope of Relevance And The Amount Of Discovery

For all the reasons set forth above (§ III.C.1.), the DRP improperly limits discovery in violation of public policy. Those same unfair and imbalanced provisions render the DRP substantively unconscionable.

### d) The DRP Is Substantively Unconscionable Because Milgard Retains The Unilateral Right to Modify Or Revoke

The DRP states: "the Company reserves the right to change, modify or discontinue this Policy at any time upon prior written notice to the Company's current employees." Motley Decl. Exh. A, at 5. Such a retention of a unilateral right to modify or revoke – even where it is restricted in significant ways – has been held substantively unconscionable. For instance, the employer in *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165 (9th Cir. 2003) maintained a compulsory arbitration clause which contained a unilateral right to modify or revoke materially similar to the DRP. *Id.* at 1179. The Ninth Circuit held such a clause to be substantively unconscionable.

> By granting itself the sole authority to amend or terminate the arbitration agreement, Circuit City proscribes an employee's ability to consider and negotiate the terms of her contract. Compounded by the fact that this contract is adhesive in the first instance, this provision embeds its adhesiveness by allowing only Circuit City to modify or terminate the terms of the agreement. Therefore, we conclude that the provision affording Circuit City the unilateral power to terminate or modify the contract is substantively unconscionable.

*Id.* at 1179.

### 3. The Offending Terms So Permeate the Agreement, and Also Show Bad Faith by Milgard, Thus, They Should Not Be Severed

In its Motion, Milgard asks the Court to sever any unconscionable terms and preserve the remainder of the clauses. As described below, the law does not permit such severance because (a) the offending terms so permeate the agreement that to sever them would be to unlawfully re-write the agreement, and (b) because Milgard's inclusion of these terms and failure to revise

- 15 -

1   them – long after they had been held unconscionable by California courts – shows bad faith on

2   Milgard's behalf.

3   Any attempt to save the agreement by severing the Carve-Out and fees language must be

4   rejected.  As the Court in *Armendariz* noted:

> [I]n the case of the agreement's lack of mutuality, such permeation [by an unlawful
> purpose] is indicated by the fact that there is no single provision a court can strike or
> restrict in order to remove the unconscionable taint from the agreement. . . . Because
> a court is unable to cure this unconscionability through severance or restriction, and is
> not permitted to cure it through reformation and augmentation, it must void the entire
> agreement. . . .  Moreover, whether an employer is willing, now that the employment
> relationship has ended, to allow the arbitration provision to be mutually applicable . . .
> does not change the fact that the arbitration agreement as written is unconscionable
> and contrary to public policy.

11  *Armendariz,* 24 Cal.4th at 124-25.  In *Armendariz*, the Supreme Court held that more than one

12  unlawful provision in an arbitration agreement weighs against severance.  4 Cal. 4th at 124.  The

13  Court stated:  "Such multiple defects indicate a systematic effort to impose arbitration on an

14  employee not simply as an alternative to litigation, but as an inferior forum that works to the

15  employer's advantage."  *Id.*  Subsequent decisions have refused to apply severance to an

16  agreement that contains more than one unconscionable provision.  *See, e.g., Fitz,* 118 Cal. App.

17  4th at 726-727; *Abramson,* 115 Cal. App. 4th 638.

18  Moreover, any attempt by Milgard to disavow any of the offending clauses must be

19  rejected because it shows the precise type of bad faith that the Supreme Court of California

20  warned against in *Armendariz*:

> An employer will not be deterred from routinely inserting such a deliberately illegal
> clause into the arbitration agreements it mandates for its employees if it knows that
> the worst penalty for such illegality is the severance of the clause after the employee
> has litigated the matter. In that sense, the enforcement of a form arbitration agreement
> containing such a clause drafted in bad faith would be condoning, or at least not
> discouraging, an illegal scheme, and severance would be disfavored unless it were for
> some other reason in the interests of justice. The refusal to enforce such a clause is
> also consistent with the rule that a party may waive its right to arbitration through bad
> faith or willful misconduct.

DUCKWORTH PETERS LEBOWITZ OLIVIER  LLP
100 Bush Street, Suite 1800
San Francisco, CA  94104

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO
DEFENDANT'S MOTION TO COMPEL ARBITRATION

DUCKWORTH PETERS LEBOWITZ OLIVIER LLP
100 Bush Street, Suite 1800
San Francisco, CA 94104

1   *Armendariz,* 24 Cal.4th at 124, n. 13 (citations omitted).  As demonstrated above, the offending

2   clauses were shown to be unlawful several years prior to the drafting of the DRP.  The Carve-

3   Out provision had been declared unlawful six years prior by the Court of Appeal (*Stirlen*), and

4   three years prior by the California Supreme Court (*Armendariz*) and the fees/costs language

5   repeatedly declared unlawful, including the year prior by the California Supreme Court

6   (*Armendariz*).  Fouts' employment spanned another six years since drafting during which

7   Milgard could have easily reformed its clauses to comply with California law.  Milgard's failure

8   to alter its arbitration clauses either prior to Fouts' hire date or subsequent to his termination to

9   conform to settled law is inexcusable and shows bad faith.

10          Third, the interests of justice – the "overarching" consideration in the severability

11  determination – are not served by severance here.  *Armendariz,* 24 Cal. 4th at 124.   In

12  *Armendariz*, the Supreme Court identified two policy reasons for severing objectionable terms

13  including (1) "conserv[ing] the contractual relationship," and (2) "prevent[ing] parties from

14  gaining undeserved benefit or suffering undeserved detriment as a result of voiding the entire

15  agreement."  *Id.* at 123-24.  The first policy is inapplicable where the contractual relationship has

16  already ended.  *Abramson,* 115 Cal. App. 4th at 667 ("[N]ow that the parties employment

17  relationship has ended . . . there obviously is no contractual relationship to preserve."); *Fitz,* 118

18  Cal. App. 4th at 727.  The second policy also is not served here. In fact, under the circumstances,

19  severance of the unlawful provisions would *produce* rather than *prevent* undeserved benefit and

20  detriment.   Here, just as in *Abramson*, severing the unilateral provisions would have the effect

21  only of forcing the employer to also arbitrate its claims against the employee when, in fact, the

22  employer had no claims to arbitrate.  Thus, the court concluded, that "[i]n effect, selective

23  severance would relegate only the employee to the arbitration forum."  *Abramson,* 115

24  Cal.App.4th at 667.

25

26  **IV.    CONCLUSION**

27          For all the foregoing reasons, Milgard's motion should be denied in its entirety.

28

1

2    Dated:  March 1, 2012              DUCKWORTH PETERS LEBOWITZ OLIVIER LLP

3

4                                       By:_____/s/_____,
                                            Noah D. Lebowitz
5                                       Attorneys for Plaintiff John Fouts

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DUCKWORTH PETERS LEBOWITZ OLIVIER LLP
100 Bush Street, Suite 1800
San Francisco, CA  94104

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO
DEFENDANT'S MOTION TO COMPEL ARBITRATION