**\*\* E-filed April 25, 2012 \*\***

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JOHN FOUTS,<br><br>　　　　Plaintiff,<br>　v.<br><br>MILGARD MANUFACTURING, INC.; and DOES 1-25,<br><br>　　　　Defendants.<br>_____/ | No. C11-06269 HRL<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAYING THE CASE**<br><br>**[Re: Docket No. 8]** |

　　　　Plaintiff John Fouts brought this action in Monterey County Superior Court against Milgard Manufacturing, Inc. ("Milgard"), his former employer, alleging employment discrimination and wrongful termination. Dkt. No. 1, Exh. A ("Complaint"). Milgard timely removed the case to this court. Dkt. No. 1 ("Notice of Removal"). Fouts worked as a Sales Representative at Milgard from 2003 to 2005, and a Senior Sales Representative from 2005 until approximately March of 2010. Complaint ¶¶ 1, 5. In October 2009, he was diagnosed with stage two squamous cell carcinoma and shortly thereafter underwent surgery to treat the cancer. Id. ¶ 6. Following his diagnosis, Fouts alleged he repeatedly attempted to discuss potential accommodations with his supervisors at Milgard, but these attempts were denied or ignored. Id. ¶ 8. In early 2010, Fouts had to undergo radiation therapy five days a week for several weeks, which precluded him from working. Id. ¶ 9. In March of 2010, Milgard contacted Fouts to notify him that he had been placed on personal leave and was required to return his company car, laptop, and cellular phone, which he did. Id. ¶ 13. Several

months later, Milgard's Director of Employee Relations contacted Fouts to assure him that he would not be terminated due to his absence, but when Fouts checked his online employment information, he discovered he had already been listed as terminated. Id. ¶ 14. According to the pending motion, Fouts contacted Milgard in 2010 to request that the parties begin mediation pursuant to the Dispute Resolution Policy that the parties entered into when Fouts began working in 2003. Dkt. No. 8, Exh. 2, p. 4. The parties participated in a mediation session in December 2010, which did not resolve their dispute. Dkt. No. 8, p. 4. Approximately seven months after the mediation session, Fouts filed the instant action.

Now, Milgard moves to compel arbitration. Dkt. No. 8. Fouts opposes the motion. Dkt. No. 12. Both parties have consented to the undersigned's jurisdiction pursuant to 28 U.S.C. § 636(c). The court has held a hearing on the motion on April 10, 2012. Based on the moving papers, arguments presented at hearing, and applicable authority, the court rules as follows.

LEGAL STANDARD

The Federal Arbitration Act ("FAA") states that a "written provision in any maritime transaction or contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740, 1744 (2011). The FAA applies to employment contracts. Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 123 (2001). Pursuant to the FAA, a party may petition a court for an order compelling arbitration, staying the suit, and retaining jurisdiction to confirm the arbitration award. See 9 U.S.C. §§ 3, 4, and 9. In ruling on a motion to compel arbitration, the court may only determine 1) whether there is a valid agreement to arbitrate; and 2) whether the claims at issue are covered by the agreement. Chiron Corp. v. Ortho Diagnostic Systems, Inc., 207 F.3d 1126, 1130 (9th Cir. 2000). The court must also have both subject matter and personal jurisdiction to compel arbitration. Schwarzer et al., Cal. Prac. Guide: Fed. Civ. Pro. Before Trial § 16:94-16:95 (The Rutter Group 2004).

DISCUSSION

A. The Agreement to Arbitrate

The parties entered into a Dispute Resolution Policy when Fouts began his employment with Milgard, which governs the manner of addressing nearly all grievances that might arise between the parties (hereinafter, the "Agreement"). The Agreement provides that "the disputes covered by this Policy include any claim the Company might have against the employee. Also included is any claim under applicable state or federal law an [sic] claims for: . . . violations of public policy; . . . all forms of unlawful discriminating including . . . disability." Agreement p. 1. The Agreement exempts several types of claims not at issue in this action. Id. p. 1-2. The Agreement lays out a two-step process for the resolution of all claims. Any dispute that the parties cannot resolve through Milgard's "internal human resource channels" must first be taken to mediation, using an American Arbitration Association ("AAA") mediator. If the parties cannot resolve their dispute through mediation, "the dispute shall be resolved by exclusive, final and binding arbitration by the AAA before a single neutral Arbitrator knowledgeable in employment law who shall follow applicable state and federal law and whose decision shall be final and binding upon both the Company and the employee." Id. at 2. Milgard pays all costs associated with both steps of the proceedings, except that the employee must pay for his own legal representation. Id.

Defendant argues that because plaintiff voluntarily participated in mediation, the first of the two-step dispute resolution process agreed upon by the parties, he has waived his right to challenge the enforceability of the Agreement. Plaintiff argues that he has not waived his right to challenge the Agreement, and that it is invalid and unenforceable for two reasons: (1) because it violates California public policy; and (2) because it is unconscionable. Defendant contends that the Agreement is neither unconscionable nor in violation of public policy.

B. <u>Whether Plaintiff Has Waived his Right to Challenge the Agreement</u>

Milgard argues that by expressly requesting and participating in mediation, the first step of the Agreement's two-part dispute resolution policy, Fouts waived the ability to challenge the validity of the second step, arbitration. Motion, p. 6. Fouts argues that Milgard's authority for its argument is inapposite, and that participating in mediation does not constitute waiver of his right to challenge the arbitration proceeding. The court concludes that Fouts correctly argues that

3

participating in mediation does not constitute waiver of his right to challenge the legality of the arbitration portion of the Agreement.

"[I]f a party believes the entire contractual agreement or a provision for arbitration is illegal, it must oppose arbitration on this basis before participating in the process or forfeit the claim." Cummings v. Future Nissan, 128 Cal. App. 4th 321, 328 (Cal. App. 3d Dist. 2005); see also Moncharsh v. Heily & Blasé, 3 Cal.4th 1, 31 (1992) (holding that "a party [who] is claiming (i) the entire contract is illegal, or (ii) the arbitration agreement itself is illegal" must "raise the illegality question prior to participating in the arbitration process"). In Cummings, a wrongful termination action, plaintiff employee and defendant employer entered into an arbitration agreement that provided for two stages of arbitration. Cummings, 128 Cal. App. 4th at 323. At the first stage, the arbitrator entered an award in plaintiff's favor, but the "appellate" arbitrator reversed the initial award and found in favor of the defendant, at which point the plaintiff brought a lawsuit to confirm the original award and challenge the enforceability of the arbitration agreement. Id. The Cummings court founded its decision to deny plaintiff's claims on the proposition that the "forfeiture rule" serves to "avoid the waste of scarce dispute resolution resources" and to prevent litigants from "conceal[ing] an ace up their sleeves for use in the event of an adverse outcome." Id. at 328.

Unlike Cummings's two-step arbitration process, in which "[t]he second-level review was part and parcel of the process," the Agreement in this case contemplates a markedly different two-step process, in which the parties first mediate their claims, and proceed to arbitration only if mediation proves unsuccessful. The parties offer no authority, and the court has been unable to locate any, extending Cummings's holding to a scenario like this one, where the plaintiff participates in mediation before raising a challenge to an arbitration clause in a dispute resolution agreement. The court concludes that a mediation-then-arbitration process is materially different than a two-stage arbitration process. Mediation is intended to facilitate negotiation and settlement between the parties. In many courts, including this one, settlement-focused processes like mediation are required in all cases. Mediation is nonbinding and does not lead to a specific "outcome." Arbitration, by contrast, is a litigation-like process intended to finally adjudicate claims without expending the resources required for trial. Moreover, there is no relationship between a mediation

session and a subsequent arbitration proceeding, while under a two-stage arbitration process, the second arbitration acts as an appellate review of the original award.

Fouts's challenge in this action does not appear to create a risk similar to the one raised in Cummings. There, the parties completed both required arbitration processes, but plaintiff did not raise any challenge to the enforceability of the arbitration agreement until she received an adverse decision in the second stage. "Those who are aware of a basis for finding the arbitration process invalid must raise it at the outset or as soon as they learn of it so that prompt judicial resolution may take place before wasting the time of the adjudicator(s) and the parties." Cummings, 128 Cal. App. 4th at 328-29. Here, plaintiff agreed to participate in mediation, an entirely separate process involving relatively low costs, but challenged the arbitration provision before arbitration commenced. Milgard's argument that it only participated in mediation because it expected Fouts to abide by the Agreement is unpersuasive, because Milgard is arguing for enforcement of the Agreement and would have had to participate in mediation irrespective of whether Fouts had raised a challenge.

Accordingly, the court concludes that Fouts's challenge is timely under the Cummings and Moncharsh standard because he raised it prior to the commencement of arbitration proceedings and before any arbitration-related resources had been expended.

C. Whether There is a Valid Arbitration Agreement

Plaintiff argues that numerous parts of the Agreement are unconscionable and in violation of public policy and that the illegal elements so permeate the Agreement that this court should rescind the entire Agreement. The court's own reading of the Agreement reveals it to be a plainly written, easy to understand agreement that clearly sets forth the two-part dispute resolution policy of mediation followed by binding arbitration. It is undisputed that plaintiff entered into the agreement freely and voluntarily when he began his employment at Milgard. While the court does not find it necessary to exhaustively analyze each of plaintiff's contentions, the following analysis shows that plaintiff has not established any reason to rescind the Agreement in its entirety or sever portions thereof.

1. *Plaintiff's Claim that the Agreement Violates Public Policy*

Plaintiff argues that the Agreement violates public policy because it (1) does not ensure written findings; (2) does not provide for all types of relief that would be available in court; and (3) improperly limits the scope and methods of discovery. Dkt. No. 12. Milgard argues that the Agreement does not violate public policy on any of these grounds. Dkt. No. 17 ("Reply").

### a. Whether the Agreement Requires a Written Decision

A plain reading of the Agreement proves that plaintiff's first claim is demonstrably false. The Agreement expressly provides for "the written decision of the Arbitrator" to be made part of the official record of arbitration, along with a variety of other materials, including a transcript of the entire proceeding. Agreement, p. 4. Accordingly, there is no doubt that the Agreement ensures that written findings will be made, and that the written decision of the arbitrator will be made available to all parties.

### b. Whether the Agreement Provides for All Types of Relief That Would Be Available in Court

As for plaintiff's claim that the Agreement does not provide for all types of relief that would be available in court, the court finds that a logical reading of the Agreement proves all types of relief are available, including attorney fee-shifting where applicable. A provision that both sides bear the cost of their own attorney's fees "merely restates the 'American rule' of general applicability" and "t[akes] nothing away from" either party. Woodside Homes of California, Inc. v. Superior Court, 107 Cal. App. 4th 723, 731 (Cal. App. 4th Dist. 2003). Fouts argues that under Graham Oil Co. v. Arco Products Co., such a provision expressly excludes fee-shifting. See Dkt. No. 12, p. 8; Graham Oil Co., 43 F.3d 1244, 1247 (9th Cir. 1994). Graham is distinguishable from this case. In Graham, the arbitration agreement expressly prohibited the arbitrator from awarding certain types of damages and required each party to pay its own attorney's fees without exception. By contrast, the Agreement in this action expressly states that "the expenses of [his own legal] representation shall be the sole responsibility of the employee," but that the arbitrator "shall have the same power and authority (and no more) as would a judge in court to grant monetary damages or *such other relief as may be in conformance with applicable principles of common, decisional, and statutory law*." Agreement, pp. 2, 4 (emphasis added).

The logical reading of the Agreement is that the employee shall bear the costs of his own legal representation *unless* he establishes a legal claim that would permit fee-shifting to occur. Plaintiff points out at Cal. Gov. Code § 12965(b) does provide for fee-shifting. Pursuant to the Agreement, an arbitrator would have the authority to award attorney's fees under that statutory provision (or any other applicable fee-shifting provision) despite the general rule that each party pays its own costs of arbitration. Nothing in the Agreement suggests an alternative interpretation. Plaintiff's argument that fee-shifting is expressly excluded from the Agreement is not compelling.

### c. Whether the Agreement Provides for Adequate Discovery

Finally, the court finds plaintiff's argument that the Agreement fails to provide for adequate discovery is also unpersuasive. Fouts argues that the Agreement allows for no discovery whatsoever except for a single deposition and a single set of document requests per party. In fact, the Agreement urges the parties "to agree upon the extent of discovery which shall take place prior to the arbitration hearing." Agreement, p. 3. It limits discovery "to that which is clearly relevant and material to the dispute and for which the party has a substantial, demonstrable need." Id. It allows each party to request written discovery that meets this criteria, and permits each party to take one deposition, but says that the arbitrator may "grant, upon good cause shown, either party's request for discovery in addition to . . . that expressly provided in this Policy." Id. at 4. Therefore, the Agreement contemplates that each party may take at least one deposition as well as written discovery according to the above standard, as well as any additional discovery granted by the arbitrator *or* agreed to by the parties in advance.

"[D]iscovery limitations are an integral and permissible part of the arbitration process." Armendariz v. Foundation Health Psychcare Services, Inc., 24 Cal. 4th 83, 106, fn. 11 (Cal. 2000). California authority on the scope of discovery in arbitration proceedings holds such limits to be reasonable. See id. at 106 (finding that "access to essential documents and witnesses, as determined by the arbitrator(s)" was sufficient to adequately arbitrate a Fair Employment and Housing Act claim); Dotson v. Amgen, Inc., 181 Cal. App. 4th 975, 983-85 (Cal. App. 2d Dist. 2010) (upholding an agreement limiting each party to one deposition because an AAA arbitrator has broad discretion "to order the discovery needed to sufficiently litigate the parties' claims"); Martinez v. Master

7

Protection Corp., 118 Cal. App. 4th 107, 118 (Cal. App. 2d Dist. 2004) (stating "discovery limitations are an integral part of the arbitration process" and while such limits may disadvantage employees more than employers, they are not, as a matter of law, inadequate for purposes of arbitration).

The instant Agreement provides for sufficient discovery to fall within the California authority cited herein. Although the Agreement limits discovery compared to what would be permissible in civil litigation, such limitations are "integral and permissible" in the arbitration context. In addition, California courts have upheld arbitration agreements that permit only a single deposition per party so long as the arbitrator has discretion to permit more discovery should it be "needed." See Dotson, 181 Cal. App. 4th at 984. California courts have acknowledged that although discovery limits may benefit an employer over an employee, such inequality does not doom an arbitration agreement because the courts "assume that the arbitrator will operate in a reasonable manner in conformity with the law." Id. (citing Booker v. Robert Half International, Inc., 413 F.3d 77, 86 (D.C. Cir. 2005)). Therefore, the Agreement does not improperly limit discovery.

Accordingly, none of plaintiff's arguments that the Agreement violates public policy are persuasive, and the court will not invalidate part or all of the Agreement on these grounds.

### 2. *Plaintiff's Claims of Unconscionability*

"In California, the doctrine of unconscionability 'has both a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results.'" Monex Deposit Co. v. Gilliam, 671 F. Supp. 2d 1137, 1142 (C.D. Cal. 2009) (quoting Little v. Auto Stiegler, Inc., 29 Cal. 4th 1064, 1071, (Cal. 2003)).

When considering procedural unconscionability, courts evaluate the circumstances of the contract's formation, the relative bargaining power of the parties, and whether there was "surprise or oppression" in the contract execution. See Circuit City Stores, Inc. v. Mantor, 335 F.3d 1101, 1106 (9th Cir. 2003); Monex, 671 F. Supp. 2d 1137, 1143. While a contract of adhesion does not permit one party to negotiate or alter terms, this alone does not make a contract unconscionable. Rather, the court must evaluate "whether the challenged term is hidden in a prolix printed form or is otherwise beyond the reasonable expectation of the weaker party." Monex, 671 F. Supp. 2d at 1143 (citing

Parada v. Superior Court, 176 Cal. App. 4th 1554, 1570 (Ct. App. 2009)). In this case, although the Agreement was a contract of adhesion that Fouts had no opportunity to modify, the arbitration clauses are not hidden in the text but are written in the same typeface as the rest of the agreement, with clear headings to explain each section. In addition, the "Questions and Answers" portion of the Agreement reiterates the two-step process and the effect of binding arbitration very clearly. See Agreement pp. 6-9. Plaintiff does not contend that he was unable to read the Agreement before signing it, or that he could not understand its terms. Although the plaintiff did have to sign the contract as a condition of employment, this does not render the contract unconscionable. Accordingly, there is no evidence of procedural unconscionability in the execution of the Agreement.

"The prevailing view is that [procedural and substantive unconscionability] must both be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability." Armendariz v. Foundation Health Psychcare Services, Inc., 24 Cal. 4th 83, 114 (Cal. 2000). Without any evidence of procedural unconscionability, the court need not proceed to an analysis of substantive unconscionability. As plaintiff has not established that the Agreement is not a valid agreement to arbitrate, the court must proceed to step two of the Chiron test for ruling on a motion to compel arbitration.

### D. Whether Plaintiff's Claims are Covered by the Agreement

Plaintiff does not dispute that his claims for wrongful termination and disability discrimination are covered by the Agreement. Indeed, the Agreement specifically refers to both of these claims in the section entitled "Claims Covered by this Policy." Dkt. No. 8, Exh. A, p. 4 ("Agreement"). Accordingly, the claims are covered by the valid Agreement, and the court must grant defendant's motion to compel arbitration.

### CONCLUSION

Therefore, because the Agreement is valid and clearly covers plaintiff's grievances, the court GRANTS defendant's motion to compel arbitration, ORDERS the parties to arbitration pursuant to 9 U.S.C. § 4, and STAYS this action pursuant to 9 U.S.C. § 3 pending completion of the required arbitration. All pending case management deadlines are VACATED.

**IT IS SO ORDERED.**

Dated: April 25, 2012

———————————————
HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

**C11-06269 HRL Notice will be electronically mailed to:**

| | |
|---|---|
| Noah Lebowitz | noah@dplsf.com |
| Rhonda Shelton-Kraeber | Rhonda@alvisfrantzlaw.com |
| Mia Farber | farberm@jacksonlewis.com |
| Dylan Carp | carpd@jacksonlewis.com |
| Travis Raymond | travis.raymond@jacksonlewis.com |

**Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program.**